# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALBERT J. ANDERSON**

**CIVIL ACTION**

**VERSUS**

**NO. 17-597-JWD-SJD**

**ALLSTATE INSURANCE COMPANY**

## RULING ON MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT TOMMY TOMKINS

Before the Court is the *Motion to Exclude the Testimony of Plaintiffs' Expert Tommy Tomkins* (Doc. 194) ("*Motion*") filed by defendant Allstate Insurance Company ("Allstate"). It is opposed by plaintiffs in the consolidated cases ("Plaintiffs"). (Doc. 199.) Allstate filed a reply. (Doc. 200.) The Court heard oral argument on January 13, 2021. (Doc. 214.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the foregoing reasons, the *Motion* is denied.

## I.       BACKGROUND

Between August 13 and 15, 2016, the Baton Rouge area suffered extensive rainfall resulting in widespread flooding in areas in and around Baton Rouge, La. (hereinafter "Flood"). Hundreds of lawsuits were filed by the owners of homes damaged in the Flood against insurers participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968 ("NFIA"). Certain cases were consolidated for discovery purposes because it was determined by the Court that the cases presented common questions of law and fact. (Doc. 9.) Specifically, each of the consolidated cases were for breach of contract involving a flood insurance policy (Standard Flood Insurance Policies or "SFIPs")

that the insurers issued to Plaintiffs. In these cases, Plaintiffs seek to recover amounts claimed to be owed for losses caused by the Flood.

## II.     PLAINTIFFS' EXPERT TOMMY TOMKINS

The subject of Allstate's *Daubert* motion is Tommy J. Tompkins Jr. ("Tompkins"), who was retained by Plaintiffs to provide "expert testimony related to insurance claims and adjusting in general, NFIP claims adjusting specifically, NFIP methodology and implementation, FEMA Bulletins, damage to the insured propert[ies], as well as proper methodology and costs based on industry standard estimating programs for NFIP damage scope and estimate for related repair, replacement and remediation." (Doc. 194-2 at 1–2; Doc. 199-3 at 1.) According to Allstate, Tompkins role was more limited: "[to] critique the independent adjuster's adjustment of each of [the] individual properties." (Doc. 194-1 at 6 (citing Tompkins' deposition testimony at Docs. 194-4 at 3 and 194-6 at 7).) In the three reports provided by the parties in connection with this motion, Tompkins states that he was retained ". . . to provide an expert report on the best practices for properly adjusting the flood insurance claim for the subject property that is insured under a Federal Standard Flood Insurance Policy ('SFIP')." (Docs. 194-7 at 1, 199-4 at 1, and 199-6 at 1.)

Tompkins' resume is attached as Doc. 199-1. Tompkins is an owner and partner in ATA Consulting, LLC ("ATA"). (*Id*. at 1.) According to Plaintiffs, "Tompkins is an NFIP Authorized Adjuster who maintains a Flood Control Number (FCN) issued by the NFIP Bureau & Statistical Agent on behalf of FEMA." (Doc. 199 at 2–3 (citing Doc. 199-1).) Tompkins' affidavit indicates that he is "a National Flood Insurance Program ("NFIP") Flood authorized Insurance Adjuster/Examiner." (Doc. 199-3 at 1.) His resume also states that he has 19 years of experience as an insurance adjuster of residential property for various types of losses, including flood, wind,

hail, and hurricane damages. (Doc. 199-1 at 1–2.) He has "handled more than 1,500 insurance claims as an inside desk adjuster, and 2,500 insurance claims as an adjuster in the field." (Doc. 199-3 at 1.)

According to Allstate, Tompkins issued reports covering approximately 400 properties allegedly damaged in the Flood. (Doc. 194-1 at 7.) The parties provided the Court with only three. One concerns a property located in Springfield, La., and is attached to the Allstate Motion. (Docs. 194-7, referred to herein as the "Gill report.") Attached to Plaintiffs' opposition are two others: Doc. 199-4 (the "Womack report") and Doc. 199-6 (the "Morgan report").

All three reports follow the same basic format. The reports begin with a statement of his assignment and a brief summary of his experience. He then lists items he reviewed in connection with preparing his report. He next describes the subject property and gives a brief description of damage caused by the flood. In a section entitled "Best Practices and Common Flood Adjusting Errors", he describes generally what is involved in adjusting a NFIP flood insurance claim including the various areas of expertise required of the adjuster and a description of the estimating software used by him.

In a section entitled "Methodology", he describes the inspections "we" performed and the input of data obtained therefrom into a cost estimating software called Xactimate. The next several paragraphs describe the functioning of the Xactimate software program. While not clear in the report or from the parties' briefing, at oral argument counsel for Plaintiffs explained that the inspections performed of Plaintiffs' properties were conducted not by Tompkins but by ATA employees or contractors. It is the data from these inspections that was entered into the Xactimate software to generate the Building Flood Estimates.[1] "Following the inspection we

---

[1] The Xactimate Building Flood Estimate is sometimes referred in the briefing and herein as the "ATA Estimate" or "Building Flood Estimate."

inputted the measurements and photographs [taken by ATA employees or contractors] into a software program called Xactimate." (Doc. 194-7 at 3; Doc. 199-4 at 3; Doc. 199-6 at 3.)

The report then recites his observations and conclusions regarding the shortcomings and failures of the original adjuster's evaluation and the pricing used by the original flood adjuster. The concluding paragraph of all three reports states that The Building Flood Estimate he provided for the property "contains the reasonable and necessary costs to repair all damages that were: A)[ ] more likely than not caused by the 2016 Baton Rouge Flooding Event and B) which were covered under the Standard Flood Insurance Policy." (Doc. 194-7 at 9; Doc 199-4 at 10; Doc. 199-6 at 10.) The Xactimate Building Flood Estimate is attached as Exhibit B. (*Id*. at 4.)

Finally, he concludes that Allstate "improperly and inadequately [ ] adjusted the flood damaged items in the policyholder's home. The Carrier failed to account for proper pricing, failed to properly and adequately scope the flood damaged items, omitted flood damaged items, all of which resulted in systemic underpayment to the policyholder." (Doc. 194-7 at 10; Doc. 199-4 at 11; Doc 199-6 at 10.)

The Building Flood Estimate provided in connection with the Womack Report (Doc. 199-4) is attached to Plaintiffs' opposition as Doc. 199-5. That for the Morgan Report (Doc. 199-6) is attached as Doc. 199-7. Allstate does not attach the Building Flood Estimate for the Gill Report. (Doc. 194-7.)

## III.    ARGUMENTS OF THE PARTIES

### A.  Allstate's Arguments

Allstate's complaints about Tompkins fall into four interrelated categories: first, that he is not qualified to render the opinions he has given; second, his opinions lack a sufficient foundation to render them reliable; third, his methodology fails to meet the standard established

in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny; and fourth, Tompkins' reports fail to satisfy the mandatory disclosure requirements prescribed by Federal Rule of Civil Procedure 26(a)(2)(B). (Doc. 194 at 3.)

### 1. Tompkins' Qualifications

Allstate argues that Tompkins is not qualified "to assist the trier of fact as to damages, the causation of damages, the status of repairs as well as the actual cost of repairs." (Doc. 194 at 3.) Specifically, "he is not a contractor and has no experience in construction; [ ] he is not an engineer and has no experience in causation of structural damages such as sheathing; . . . [ ] he has no experience in plumbing, tile replacement, electricity or water mitigation; and [ ] he has never actually repaired a flooded dwelling." (*Id.* at 3; Doc. 194-1 at 3.) Allstate urges that Tompkins' formal education is limited: a G.E.D. and a certificate from a vocational school where he studied auto mechanics. (Doc. 194-1 at 6.)  While Allstate concedes he has "relevant background . . . as a flood adjuster," it argues that "he was not retained to adjust these flood claims" and, indeed "did not serve as a flood adjuster in any case." (*Id.*)

### 2. Sufficiency of Foundation for Opinions

Allstate charges that Tompkins "issued identical reports, containing 17 to 20 identical paragraphs, devoid of facts specific to each of the individual properties." (Doc. 194 at 3.) "Each report consists of boilerplate, formulaic statements and opinions regarding purported errors or deficiencies in the original adjuster's estimate." (Doc. 194-1 at 5.) "Tompkins has admitted in his reports (reproduced in approximately 400 cases) that he included cookie-cutter paragraphs that contain information or observations inapplicable to the particular property for which the report was generated" (*id.* at 7 (citing Doc. 194-4 at 5) and Doc. 194-5 at 2)), and "are filled with paragraphs that may or may not apply to the particular property for which the report was

prepared." (*id.* at 7 (citing Doc. 194-4 at 5; Doc. 194-6 at 5).) Tompkins admitted that "the only way to know which portions of a given report applied to the property for which the report was prepared would be to take his deposition and ask him." (*Id.* at 11.)

Further, Tompkins "did not actually inspect most of the properties and does not know which of the few he inspected[.]" (Doc. 194 at 3; Doc. 194-1 at 3.) He "does not know the present condition of any of these properties." (Doc. 194 at 3.) Allstate urges that "most of the properties at issue have been repaired—some partially" and yet Tompkins "failed to consider already-performed repairs". (Doc. 194-1 at 13.) "[I]n NFIP cases in which repairs are already completed, expert testimony accompanying an expert's *estimate* should be excluded because the actual cost of repairs—not an estimate—are the proper measure of damages." (*Id.* at 13 (emphasis in original) (citing *Lacroix v. State Farm Fire & Cas. Co.*, No. 09-609, 2010 WL 2265577, at *4 (E.D. La. June 2, 2010)).) Because Tompkins "has no knowledge of the current condition of any of the properties", including "costs incurred for any repairs, the sufficiency of any repairs, or even whether the property has been repaired at all," his testimony is irrelevant and will not assist the trier of fact. (*Id.* at 14.)

Allstate criticizes the repair estimates incorporated in Tompkins' report because Tompkins "has no knowledge of who prepared the estimates . . . nor does he know what information the person preparing the estimate had when he or she was preparing it." (Doc. 194-1 at 15 (citing Doc. 194-4 at 71).) Allstate argues that his opinions regarding the waterline of the flood in each home was speculation. (*Id.* (citing Doc. 194-6 at 4).)

### 3. Methodology

Allstate's attack on Tompkins' methodology mirrors its criticism of his opinions' lack of adequate foundation and data. "Because Tompkins has submitted cookie-cutter styled reports,

including boilerplate language that may or may not apply to a given property, there is no evidence that he has reliably applied the principles and methods to the facts of each individual case. Accordingly, the plaintiffs should not be permitted to call Mr. Tompkins to testify at trial." (Doc. 194-1 at 16.)

### 4. Requirements of Rule 26(a)(2)(B)

Allstate argues that Rule 26 requires that an expert's report be "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." (*Id.* at 10 (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)).) As argued in connection with the sufficiency of the foundation and methodology used, it is impossible to know what particular paragraph of a given report applies (or doesn't) to the property that is the subject of the report. Thus, the only way to know which paragraph applies to which property is to "take his deposition and ask him." (*Id.* at 11 (citing Doc. 194-4 at 6).) Because the report does not comply with the completeness requirement of Rule 26(a)(2)(B)(i), Tompkins should not be permitted to testify or, alternatively, should be made available for deposition in each of the cases at Plaintiffs' costs. (*Id.*)

### B. Plaintiffs' Arguments

In sum, Plaintiffs counter that Tompkins is well qualified to give the opinions he has rendered (Doc. 199 at 2–3, 8–10), that his opinions are well supported (*id.* at 14–17) and that Allstate's criticism goes to the weight, not admissibility of the Tompkins' opinions (*id.* at 3, 10–14). Plaintiffs insist that Tompkins' methodology is sound (*id.* at 21–22), his testimony will assist the Court on "issues of causation, recommended repair methodology, and estimated replacement costs under NFIP standards" (*id.* at 18; *see also id.* at 18–21) and Tompkins' reports satisfy the requirements of Rule 26(a)(2)(B) (*id.* at 22–23). Plaintiffs emphasize that these cases

are to be tried to the Court and therefore "the principal reason for the court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony." (Doc. 199 at 8 (citing *Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) and *Nassri v. Inland Dredging Co*., No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013)).) Plaintiffs ask the Court to deny the motion.

### 1. Tompkins' Qualifications

Plaintiffs maintain that Tompkins is an "NFIP Authorized Adjuster who maintains a Flood Control Number (FCN) issued by the NFIP Bureau & Statistical Agent on behalf of FEMA." (*Id*. at 2–3.) His experience includes 19 years of adjusting residential property claims for various kinds of losses, including floods. (*Id*. at 3.) "[H]e has handled more than 2,500 claims throughout his career as a field adjuster, and 1,500 claims as an inside desk adjuster." (*Id*.) In answer to Allstate's charge that Tompkins in not a plumber, contractor, electrician, engineer, water mitigation expert, etc., Plaintiffs respond that he is not being offered in those areas and that it is unnecessary that he be so qualified in order to give expert testimony as a flood insurance adjuster. (*Id*. at 8.) Further, expert opinion testimony can rest on practical experience rather than college degrees and formal training. (*Id*. at 9 (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments, and *Nkansah v. Martinez*, No. 15-646, 2017 WL 2812733, at *5 (M.D. La. June 28, 2017) (deGravelles, J.)).) Plaintiffs stress that "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the **weight to be assigned to the testimony by the trier of fact**, not its admissibility." (Doc. 199 at 10 (citing *Carlson v. Bioremdei Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (emphasis in original)).)

## 2. Sufficiency of Foundation for Opinions

Plaintiffs argue that a main source of Tompkins' opinions is "the facts and data within Defendant's own claim files, including the original adjuster's estimate, photographs and reports . . . , the *exact same* documents that an NFIP insurer, such as Defendant, <u>must</u> use when adjusting and paying an NFIP flood claim." (Doc. 199 at 15 (emphasis in original) (citing to the NFIP Claims Manual, Doc. 199-2 at 264).) Experts are entitled to rely on information obtained from third parties under Fed. R. Evid. 703 as long as it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject[.]" (*Id.* (quoting Fed. R. Evid. 703) (other citations omitted).) Thus, even in those cases where Tompkins did not perform a site inspection of a given property (and Plaintiffs implicitly concede there were such cases), he was entitled to rely on the photographs and other information in the original claims file. (*Id.* at 16 (citing *Salinas v. State Farm Fire & Cas. Co.,* No. 10-194, 2012 WL 5187996 (S.D. Tex. Feb. 23, 2012) and *AIG Europe LTD. v. Caterpillar, Inc*., No. 17-319, 2019 WL 8806217 (E.D. Tex, Oct. 3, 2019)).)

As to Allstate's argument that Tompkins' estimates are irrelevant once actual repairs are made, Plaintiffs contend that that the case relied upon by Allstate, *Lacroix v. State Farm Fire & Cas. Co*, No. 09-609, 2010 WL 2265577 (E.D. La. June 2, 2010), "dealt with a very specific set of facts which are <u>not present here</u>" and is therefore distinguishable. (Doc. 199 at 19 (emphasis in original).) In addition, Plaintiffs argue that the cost of repairs made to the homes do not have to come from the expert. Rather, Plaintiffs themselves will provide testimony regarding any repairs that were actually done, and that Tompkins is entitled to rely on such information. (*Id.* at 14 n.6.)

Plaintiffs do not directly challenge Allstate's argument that there are inconsistencies between Tompkins' report and his deposition testimony and that some of the conclusions within his reports may "turn out to be inaccurate."[2] But Plaintiffs counter that incorrect conclusions "are issues of credibility" (*id*. at 13 (citing *Moss v. Ole S. Real Estate, Inc*., 933 F.2d 1300, 1307 (5th Cir. 1991)) and inconsistencies "are matters best left for the trier of fact at trial." (*id*. (citing *Alonso v. Westcoast Corp*., No. 13-563, 2015 WL 9076404, at *4 (M.D. La. Dec. 16, 2015)).) Flawed assumptions are "matter[s] for cross examination and go[ ] to the weight to be given by the trier of fact." (*Id*. at 12 (quoting *Arceneaux v. Lexington Ins. Co.,* No. 11-423, 2013 WL 5839325, at *1 (M.D. La. Oct. 30, 2013).)

As to Allstate's charge that Tompkins issued reports with cookie-cutter paragraphs that contain information or observations inapplicable to the particular property for which it was generated and are filled with paragraphs that may or may not apply to the particular property for which the report was prepared, Plaintiffs disagree and insist that "[i]f a paragraph appears in one of Tompkins' reports, that paragraph is specific to the subject property for which it was prepared." (Doc. 199 at 21 (citing Tompkins' Aff., Doc. 199-3 ¶ 7).) Plaintiffs explain that while the language found in certain paragraphs of separate reports may be the same, "Tomkins has confirmed in his sworn affidavit that each paragraph within the *Observations* section of his expert reports are based upon his observations for that specific property." (*Id*.)

### 3. Methodology

As argued above, Plaintiffs contend that a flood claims adjuster need not make a site inspection in order to render an opinion regarding the need and costs of repair. (*Id*. at 16.) It was

---

[2] While Plaintiffs concede these points "for arguments sake only", they make no effort to rebut the substance of Allstate's allegations in this regard. (Doc. 199 at 13.)

perfectly appropriate for Tompkins to rely on the claims file of the original adjuster in performing his analysis and reaching his conclusions. Experts are entitled to rely on information obtained from third parties under Fed. R. Evid. 703 as long as it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject[.]" (Doc. 199 at 15 (quoting Fed. R. Evid. 703) (other citations omitted).) Specifically, an expert may, and often does, rely on facts and data supplied by others. (*Id*. at 16 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Smith Tank & Steel, Inc*., No. 11-830, 2014 WL 12690177, at *4 (M.D. La. Nov. 6, 2014)).) And the fact that the reports may contain cookie-cutter paragraphs or boiler plate language "does not change the fact that Tompkins applied reliable principles and methods to each specific case." (*Id.* at 21.)

### 4. Requirements of Rule 26(a)(2)

Plaintiffs maintain that Tompkins' reports "satisf[y] each of the six requirements of Rule 26(a)(2)(B)." (*Id*. at 22.) First, the reports set forth the items in dispute and state "all the opinions Tompkins will express and the basis and reasons for them." (*Id*.)  The reports set out the deficiencies Tompkins found in the evaluation of the original claims' adjustments and the amount of the "substantial underpayments" are incorporated in the "Building Flood Estimate" which is attached to each report. (*Id*.) There, "the amount of these substantial underpayments are quantified[.]" (*Id*.) These Building Flood Estimates set out the "reasonable and necessary costs to repair all damages that were: A) more likely than not caused by the 2016 Baton Rouge Flooding Event and B) which were covered under the Standard Flood Insurance Policy." (*Id*. (citing Docs. 194-7 at 9; 199-4 at 10 and 199-6 at 10).)

Plaintiffs insist that the facts and data upon which Tompkins relied is set out in each report:

To prepare this report, I have reviewed the Carrier's entire claim file, including the original adjuster's estimate, inspection photographs, claim file narrative notes, log notes, preliminary report, final report, and any contractor's estimates and engineer's reports. In addition, I have reviewed FEMA's National Flood Insurance Program Claims Manual which supersedes and incorporates FEMA's prior WYO Bulletins w-13025a, Bulletin w-15025, Bulletin w-17065 and the addendum to the Claims Manual Sheathing Addendum, Part 3 – Section VIII. I have also reviewed FEMA Technical Bulletin 2 and the Standard Flood Insurance Policy.

(Doc. 199 at 23 (citing Doc. 194-7 at 1; Doc. 199-4 at 1; and Doc. 199-6 at 1).) The Building

Flood Estimate is attached and supports and quantifies his contention regarding the original

adjuster's estimating errors and his contention that the insured was "substantially underpaid."

(*Id*. (citing Doc. 199-3 ¶ 7; Doc. 199-4 and Doc. 199-6).) Tompkins' qualifications (in the form

of his resume), his deposition history and fee schedule are also disclosed. (*Id*. (citing Docs. 199-1

and 194-2 at 4).)

### C.  Allstate's Reply

Allstate reiterates its earlier arguments that Tompkins' 400 or so reports do not comply

with the requirements of Rule 26(2)(2)(B) because, by Tompkins' own admission in deposition

testimony, there is no way to tie a given paragraph in a report to a particular property and the

only way to do so would be to take his deposition. (Doc. 200 at 4.) Allstate restates its charge

that Tompkins is unqualified because he "never performed repairs to a flood-damaged home,

never held a general contractor's license, and never worked as a general contractor, plumber, or

electrician." (*Id*. at 5.)

Because Tompkins failed to address or even reference any of the completed repairs, his

testimony is irrelevant since, when repairs have been made, it is the actual cost of the repairs and

not the estimate which is the proper measure of damages. (*Id.* (citing *Lacroix*, 2010 WL

2265577, at *4).) Allstate repeats its argument that Tompkins' opinions are unreliable because

they are "devoid of sufficient facts or data." (*Id*. at 6.) For instance, Tompkins is unaware "of

12

who prepared the estimates which his reports supposedly incorporate." (*Id*. at 7.) There is "not a shred of evidence," insists Allstate, "that he reliably applied requisite principles and methods to the facts of each individual case." (*Id*. at 8.)

## IV.    STANDARD

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. Allstate's motion is a Rule 702 challenge based on Tompkins' lack of qualifications and a *Daubert* challenge based on the lack of an adequate factual foundation and his failure to use an accepted methodology. *See Daubert v. Merrell Dow Pharm., Inc*. 509 U.S. 579 (1993). Allstate also questions whether his report meets the requirements of Rule 26(a)(2)(B). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id*. (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case.  *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the

technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

The Supreme Court too has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (*cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co.*, 526 U.S. at 147.

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138–39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

"As one Court of Appeals has stated, trial judges are gatekeepers, not armed guards." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268.2 (2d ed. 1987) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir.

1998)); *see also, Guild v. Gen. Motors Corp*., 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ("[T]rial judges acting as gatekeepers under Daubert must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co*., 61 F.3d 1038, 1045 (2d Cir. 1995)).

As the Court in *General Electric Capital Business Asset Funding corp. v. S.A.S.E. Military Ltd.,* stated, "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." No. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987)); *see also Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc*., No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

For purposes of the *Daubert* analysis here, it is also important to note that these cases will be tried to the Court, not a jury. "[S]ince Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping." 29 Victor J. Gold, *Federal Practice & Procedure* § 6270 (2d ed. 2020).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by *Daubert* is to ensure that only reliable and relevant expert testimony is presented to the jury. Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, J) (citations and quotations omitted); *see also Nassri v. Inland Dredging Co*., No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013).

16

Or, stated another way, "[t]here is less need for the gate keeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.")

## V.   DISCUSSION

### A.  Tompkins' Qualifications

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded by statute on other grounds*. Indeed, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson,* 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Allstate seeks to disqualify Tompkins as an expert in part because his formal education is limited: a G.E.D. and a certificate from a vocational school where he studied auto mechanics. (Doc. 194-1 at 6.)  However, the Supreme Court in *Kumho Tire*, 526 U.S. at 148–149, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience.[3]  Additionally, the 2000 advisory committee notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

---

[3] *See also LeBlanc v. Chevron USA, Inc*., 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam) (unpublished).

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id.* at 412 (quoting *Kumho Tire*, 526 U.S. at 148); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001). ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added)); *Watson v. Snap-On Tools, Inc*., No. 04-1313, 2006 WL 2114558, at *5 (W.D. La. July 26, 2006).

The Court finds that Tompkins is sufficiently qualified to testify in the area tendered, i.e. as a flood claims adjuster. Tompkins' affidavit indicates that he is "a National Flood Insurance Program ("NFIP") Flood authorized Insurance Adjuster/Examiner." (Doc. 199-3 at 1.) His resume indicates he has 19 years of experience as an insurance adjuster of residential property for various types of losses, including flood, wind, hail, and hurricane damages. (Doc. 199-1 at 1–2.) He has "handled more than 1,500 insurance claims as an inside desk adjuster; and 2,500 claims as an adjuster in the field." (Doc. 199-3 at 1.) As he states in his affidavit, "The NFIP flood insurance claims adjusting process involves many disciplines [including] . . . knowledge in construction methods[,]…construction techniques and materials[.]" (Doc. 194-7 at 2; Doc. 199-4 at 2; Doc. 199-6 at 2.) Tompkins claims that expertise "based on my years of training and experience." (*Id.*)

The Court rejects Allstate's argument that Tompkins is not qualified because he never repaired a flood damaged home and is not a contractor, plumber or electrician.

Rule 702 expressly recognizes five bases for qualifying an expert: "knowledge, skill, experience, training, or education." It is clear that a background in just one of

18

these five may be sufficient. For example, a witness with an academic background in a given area but no practical experience may still qualify as an expert. The same is true for a witness with experience but no formal education.

29 Victor J. Gold, *Federal Practice & Procedure* § 6264.1 (2d ed. 2020).

In this case, Tomkins has years of experience adjusting claims like the ones before the Court which qualifies him to testify as an expert in this case. That fact that he has no hands-on experience in repairing homes or doing general contracting, plumbing or electrical work does not disqualify him. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176–77 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp*., 37 F.3d 1069 (5th Cir. 1994)) ("A witness therefore can qualify as an expert even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge or skill. Thus, although the absence of hands-on experience is certainly relevant to the determination whether to accept a witness as an expert, it is not determinative.").

> The fact that another discipline, mechanical engineering for example, may also provide training that would qualify an expert in this area, doesn't disqualify those outside the field of mechanical engineering. It is not uncommon for multiple disciplines to have overlapping areas of expertise. And, as long as the expert is sufficiently trained, educated or knowledgeable about a given subject matter, he may opine in that area even if other disciplines also exercise expertise on the matter. So, for instance, "[a] medical degree is not a prerequisite for expert testimony relating to medicine ... [W]e have held that scientists with PhDs were qualified to testify about fields of medicine ancillary to their field of research." *Carlson*, 822 F.3d at 200. *See also St. Martin v. Mobil Offshore & Expl. & Producing, U.S*., 224 F.3d 402, 405–06, (5th Cir. 2000) (explaining that witness' expertise in marshland ecology along with personal observation of property in question sufficiently qualified him as an expert on servitude owner's damage to marshland, even though not trained as a hydrologist)."

*Sexton v. Exxon Mobil Corp*., No. 17-482, 2020 WL 5292046, at *8 (M.D. La. Sept. 4, 2020) (deGravelles, J.); *see also Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir. 1991) (collecting cases) (allowing a mechanical engineer to testify regarding consumer expectations).

**B. Sufficiency of Foundation for Opinions**

"Rule 702(b) requires that expert testimony be 'based upon sufficient facts or data.' The Advisory Committee's Note to this provision states that this calls for a 'quantitative rather than qualitative analysis.' The question is whether the expert considered enough information to make the proffered opinion reliable." 29 Victor J. Gold, *Federal Practice & Procedure* § 6268 (2d ed. 2020).

> The word "sufficient" signifies that the expert may properly base her opinion on something less than all the pertinent facts or data. Thus, sufficiency is not a matter of whether the judge believes in the facts or data on which the expert relies. Rather, sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom.

*Id.*

According to his report and affidavit, a primary source of data relied upon by Tompkins in all cases was Allstate's claims file for each property which included the data generated by the original adjuster.

> To prepare this report, I have reviewed the Carrier's entire claim file, including the original adjuster's estimate, inspection photographs, claim file narrative notes, log notes, preliminary report, final report, and any contractor's estimates and engineer's reports. In addition, I have reviewed FEMA's National Flood Insurance Program Claims Manual which supersedes and incorporates FEMA's prior WYO Bulletins w-13025a, Bulletin w-15025, Bulletin w-17065 and the Addendum to the Claims Manual Perimeter Wall Sheathing Addendum, Part 3 – Section VIII. I have also reviewed FEMA Technical Bulletin 2 and the Standard Flood Insurance Policy.

(Doc. 194-7 at 1; Doc 199-4 at 1; and Doc 199-6 at 1.)

Allstate does not question the accuracy or completeness of the data generated by the original adjuster and found in Allstate's claims files. Indeed, as Plaintiffs point out, "Tompkins formulated his opinions based upon his review of the facts and data within Defendant's own claim files," (Doc. 199 at 15 (citing Doc. 194-7 at 1)), "which are the *exact same* documents that

an NFIP insurer, such as Defendant, <u>must</u> use when adjusting and paying an NFIP flood claim,"
(*Id*. (emphasis in original) (citing Doc. 199-2 (citing 44 C.F.R. 62.23(i)(10)(2018))).)

With this factual foundation, Tompkins' reports utilize a computer software program
called Xactimate, a part of Xactware Solutions, to ascertain prices for construction material and
labor on Plaintiffs' homes. He explains that Xactware provides pricing "based on actual prices
and transactions (completed bids) that have occurred recently in a specific area." (Doc 194-7 at
3; Doc. 199-4 at 3; Doc. 199-6 at 3.) According to Tompkins, "22 of the top 25 property
insurance companies in the U.S. and 10 of the top Canadian insurers use Xactware property
insurance claims tools." (*Id*.)

The conclusions set out in Tompkins' report rely in part on data generated by third
parties. An expert can rely upon otherwise inadmissible evidence as long as it is of a type
"reasonably relied on by other experts in the particular field." Fed. R. Evid. 703, advisory
committee's notes to 2000 amendment; *see also Monsanto Co. v. David*, 516 F.3d 1009, 1015–
16 (5th Cir. 2008) (finding that expert could rely upon a report prepared by someone else). The
modern view recognizes that experts often rely on facts and data supplied by third parties. *See
Gussack Realty Co. v. Xerox Co.*, 224 F.3d 85, 94 (2d. Cir. 2000). The term "data" also is
intended to encompass the reliable opinions of other experts. Fed. R. Evid. 702, advisory
committee's note to 2000 amendments; *see also Mason v. Safeco Ins. Co.,* No. 09–1081, 2010
WL 3341582, at *8 (E.D. Mo. Aug. 23, 2010) ("[a]n expert may rely on the reliable opinions of
another expert in forming his own opinions"); *see also Trinity Med. Servs., L.L.C. v. Merge
Healthcare Sols., Inc.*, No. 17-592, 2020 WL 1309892, at *9 (M.D. La. Mar. 19, 2020)
(deGravelles, J.) (approving the use by business loss expert of data provided by a third party);

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Smith Tank & Steel, Inc.*, No. 11-830, 2014 WL 5794952, at *4 (M.D. La. Nov. 6, 2014) (deGravelles, J.).

Allstate argues, however, that Tompkins "did not actually inspect most of the properties and does not know which of the few he inspected." (Doc. 194 at 3.) Even if he did, he took no measurements or notes of interviews with the homeowners. (Doc. 200 at 7 (citing Doc. 194-6 at 2–3).) Plaintiffs counter that a physical inspection of the property by Tompkins is not required for him to opine on the subject properties. (Doc. 199 at 16–17 (citing *Salinas v. State Farm Fire & Cas. Co.,* No. 10-194, 2012 WL 5187996 (S.D. Tex. Feb. 23, 2012) and *AIG Europe LTD. v. Caterpillar, Inc*., No. 17-319, 2019 WL 8806217 (E.D. Tex. Oct. 3, 2019), *aff'd*, 831 F. App'x 111 (5th Cir. 2020). Allstate fails to address these cases in its reply memorandum.

The Court agrees with Plaintiffs. *Salinas* involved a hurricane loss in a first party property insurance case similar to the present case. The defendant-insurer moved the court to exclude plaintiffs' experts retained to testify regarding the property damage to the home and costs of repair on the ground that the experts had not inspected the home and were relying on information provided by others. The court stated:

> State Farm also argues that, because Nelson did not personally inspect the Property, his opinions are based on insufficient facts and/or data and thus must be excluded. Dkt. No. 65. Again, an expert does not need to rely on first-hand observation in order to form reliable opinions. *See Daubert*, 509 U.S. at 591. The fact that Rabner, and to some extent Nelson, may rely on observations of others does not make their opinions unreliable and State Farm has not shown that the observations of Flores and others are fundamentally flawed.

*Salinas*, 2012 WL 5187996, at *6.

Similarly, the court in *AIG Europe* denied AIG's motion to exclude a fire cause and origin expert because he had not inspected the subject property. "AIG provides, and the court has found, no authority supporting the position that a fire expert's failure to inspect the damaged

22

property personally renders his opinions as to causation unreliable." *AIG Europe LTD.,*2019 WL 8806217, at *10.

It is true that Tompkins' failure to personally inspect each of the 400 or so properties involved represents data presumably available to him which he did not consider. But this goes to the weight, not admissibility of his testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land More Or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Prop. Cas. Co.*, No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009).

Allstate next argues that Tompkins' opinions are fatally flawed because they are contained in "cookie-cutter paragraphs that contain information or observations inapplicable to the particular property for which the report was generated" (Doc. 194-1 at 7 (citing Doc. 194-4 at 5 and Doc. 194-5 at 15)), and "are filled with paragraphs that may or may not apply to the particular property for which the report was prepared." (Doc. 194-1 at 7 (citing Doc. 194-4 at 5 and Doc. 194-6 at 2).) Tompkins admitted in deposition that "the only way to know which portions of a given report applied to the property for which the report was prepared would be to take his deposition and ask him." (Doc. 194-1 at 11 (citing Doc. 194-4 at 5).)

Plaintiffs disagree and insist that "[i]f a paragraph appears in one of Tompkins' reports, that paragraph is specific to the subject property for which it was prepared." (Doc. 199 at 21 (citing Tompkins' Aff., Doc. 199-3 ¶ 7).) Plaintiffs concede that although the language found in certain paragraphs of his separate reports may be the same, "Tompkins has confirmed in his sworn affidavit that each paragraph within the *Observations* section of his expert reports are based upon his observations for that specific property." (*Id.*) Plaintiffs also concede that there are

23

inconsistencies between his report and his deposition testimony. However, argue Plaintiffs, inconsistencies "are matters best left for the trier of fact at trial" (*Id*. at 13 (citing *Alonso v. Westcoast Corp*., No. 13-563, 2015 WL 9076404, at *4 (M.D. La. Dec. 16, 2015).) Flawed assumptions are "matter[s] for cross examination and goes to the weight to be given by the trier of fact." (*Id*. at 12 (quoting *Arceneaux,* 2013 WL 5839325, at *1).)

There are certainly inconsistencies between and among the three Tompkins' reports on one hand and his deposition testimony and affidavit on the other. For instance, he writes in all three reports that "Site inspections are an integral part of the adjusting process." (Doc. 194-7 at 2; Doc. 199-4 at 2; Doc. 199-6 at 2.) In each report, he claims that "we . . . visited" the property which is the subject of the report and details that we "made a thorough inspection of the Property[;]. . .inspected the exterior elevations, windows, doors, interior, and foundation. . .[;] took extensive pictures documenting the materials used to construct th[e] homes. . .[and] took measurements of all relevant areas of the Property affected by the 2016 Baton Rouge Flood Event." (Doc. 194-7 at 3; Doc. 199-4 at 3; Doc. 199-6 at 3.)[4] Yet, in his deposition testimony, he states that he has no record that he inspected any of the properties, no photographs of any inspections done by anyone from ATA (the company he worked for), no notes of what transpired during the inspections, and no notes of any interviews with the policyholders. (Doc. 194-6 at 72–73.) But in his affidavit, he states that "Any paragraph within the Observations section of my Expert Reports was based upon my observations of that specific property." (Doc. 199-3 at 1.)

The Court agrees with Allstate that many of the paragraphs in the three reports made available to the Court contain the exact same wording. Plaintiffs argue, however, the same

---

[4] At oral argument, Plaintiffs' counsel stated that "we", as used in this part of the report, refers not to Tompkins but to ATA employees and contractors. He also stated that the identities of these individuals had been provided to Allstate.

paragraph "similarly appl[ies] to numerous residential NFIP flood cases arising out of the same August 2016 Louisiana flood event." (Doc. 199 at 21.) In deposition testimony, he agreed that "there was no way from looking at a particular paragraph to identify which portion of that paragraph applied to that particular property." (Doc. 194-4 at 5.) In his affidavit, however, he states "Any paragraph within the Observations section of my Expert Reports was based upon my observations of that specific property. The Observations section of my Expert Reports is limited to omitted and under-scoped items, which were the result of errors or omissions by Defendant's independent adjusters." (Doc. 199-3 at 1.)

While these inconsistencies will undoubtedly be the subject of vigorous cross examination at trial and may well have an impact on the credibility of this witness and the weight to be given to his evidence, they are not grounds for excluding the testimony altogether. "Matters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292, at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 935 (W.D. Wis. 2007)) ("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes and miscalculations are not grounds for excluding evidence." (citing *Daubert*, 509 U.S. at 596)); *see also Sexton*, 2020 WL 5292046, at *6; *Alonso v. Westcoast Corp.*, 2015 WL 9076404, at *4.

Furthermore, as stated above, Tompkins was not required to inspect the properties in order to give his opinions and may base his opinions on the data found in Allstate's claims file and the original adjuster's notes, measurements, photographs and the like. Allstate has not challenged these, but even if it did challenge Tompkins' underlying data, these matters go to the weight and not the admissibility of the evidence. *14.38 Acres of Land, More Or Less Situated in*

*Leflore County, Miss.*, 80 F.3d at 1077; *Imperial Trading Co.*, 2009 WL 2356292, at *3; *Trinity Med. Servs.,* 2020 WL 1309892, at *7.

In addition, Allstate argues that Tompkins' testimony should be excluded because "most of the properties at issue have been repaired – some partially" and yet Tompkins "failed to consider already-performed repairs". (Doc. 194-1 at 13 (citing Doc. 194-8).) Where "repairs are already completed, expert testimony accompanying an expert's *estimate* should be excluded because the actual cost of repair—not an estimate—are the proper measure of damages." (Doc. 194-1 at 13 (emphasis in original) (citing *Lacroix v. State Farm Fire & Cas. Co.*, No. 09-0609, 2010 WL 2265577, at *4 (E.D. La. June 2, 2010)).) Plaintiff responds that *Lacroix* is distinguishable (Doc. 199 at 19), that Plaintiffs will provide evidence via Plaintiffs themselves regarding any repairs that were actually made, and that Tompkins is entitled to rely on such information (*id*. at 14 n. 6).

In *Lacroix*, the plaintiffs' home had suffered flood and wind damaged as a result of Hurricane Katrina. 2010 WL 2265577, at *1. The defendant, State Farm Fire and Casualty Company, provided both homeowners and flood insurance. *Id.* Plaintiffs sued under both policies and retained an expert who inspected the home after most repairs had been made. *Id.* The expert reviewed the State Farm claims file including photographs taken by State Farm, but did not review receipts, bills or any other documents related to the repairs made to the home. *Id.* His estimate for repairs for the wind damage was based on computer estimating software, not the actual costs of repair. *Id.* State Farm moved to exclude the expert's testimony under *Daubert* arguing the expert failed to use the proper methodology, i.e. the actual cost of repair rather than an estimate. *Id.* at *2–3. For the same reason, State Farm argued that the expert's testimony would not assist the finder of fact.

The court found the expert's "failure to consider the actual cost of the repairs to the home or to explain why those costs were not relevant in estimating the damages is troubling; however, those failures do not render his methodology unreliable," reasoning that '[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means for attacking shaky but admissible evidence.'" *Lacroix* at * 4 (quoting *Daubert*, 509 U.S. at 596). However, he found that "*with respect to the damages that have already been repaired*, [the expert's] testimony will not assist the trier of fact." *Id*. (emphasis added.)

Here, while both sides seem to agree that repairs have been completed to some of the properties, it is clear some of the properties remain unrepaired and others only partially repaired. Allstate states "*Most* of the properties at issue have been repaired—some *partially*." (Doc. 194-1 at 13 (emphasis added).) Neither Allstate nor Plaintiffs have identified for the Court which properties have been completely repaired, not repaired at all, and those which are partially repaired. As to those properties partially repaired, neither Allstate nor Plaintiffs have indicated what items remain unrepaired and whether those items are included in Tompkins' estimate.

As to those properties which are unrepaired, *Lacroix* does not apply and Allstate's motion is denied. Plaintiffs suggest that as to those properties only partially repaired, "Tompkins' estimates will be helpful for the trier of fact's determination of the proper scope of repair for these incomplete items, and the estimated cost of repair based on NFIP standards." (Doc. 199 at 19.) Depending on the repair involved to a given property, that might well be true. *See Lockett v. Am. Nat. Prop. & Cas. Co.*, No. 13-5407, 2014 WL 2768720, *3 (E.D. La. June 18, 2014) (Barbier, J) ("[T]he Court finds that, even if it agreed with ANGIC that estimates may not be

relied upon when repairs are complete, [the expert's] estimate may be relied upon to the extent that repairs are not complete.") But without more specific information, it is impossible to know.

Furthermore, several cases have held that "there are circumstances in ACV [actual cash value] flood cases where estimates and testimony are appropriate elements of proof, even after repair work has been completed[.]" *Young v. Imperial Fire & Cas. Ins. Co.*, No. 13-5246, 2014 WL 3662587, *6 (E.D. La. July 21, 2014). Discussing and relying on *Stevens v. Allstate Ins. Co.*, 19 F. Supp. 3d 690 (E.D. La. 2014) (Fallon, J.), [5] the Court in *Young* said:

> That Court discussed a number of cases in this Circuit and District which, taken together, stand for the proposition that estimates and testimony *may* be admissible at trial even after an insured proceeding on an ACV basis has completed repairs to his or her home. *See, e.g., Williams v. Allstate Indemnity Co*., 359 Fed. Appx. 471, 474 (5th Cir.2009); *Lacroix v. State Farm Fire & Casualty Co*., No. 09–CV–0609, 2010 WL 2265577 (E .D. La. June 2, 2010) (Duval, J.); *Hillard v. Bankers Specialty Insurance*, No. 13–CV–0200, 2013 WL 5961104, *2 (E.D. La. Nov. 7, 2013) (Lemmon, J).
>
> Whether estimates and testimony (as opposed to receipts or invoices alone) are ultimately considered at trial by the District Judge in this case will depend upon particular facts and circumstances of the Youngs' claim that are not currently before the Court. However, the recent *Stevens* decision and the cases cited by the Court therein do establish that an ACV claimant in a flood case may well be entitled to present types of evidence at trial different than those typically allowed to prove a pure RCV claim for additional funds.

*Young*, 2014 WL 3662587, at *6.

As the Court in *Stevens* explained, "[b]ecause the actual cash value is ordinarily determined soon after damage occurs, it ordinarily is established via an estimate." 19 F. Supp. 3d at 696.

---

[5] *Stevens* involved a SFIP issued by Allstate. Although "only the 'replacement cost' provision [was] applicable" in that case, the Court noted that this was "something of a misnomer in that [the provision] incorporates both a 'replacement cost' approach and an 'actual cash value' approach in settling claims." *Stevens*, 19 F. Supp. 3d at 694. *See also Bowie v. Am. Sec. Ins. Co*., No. 13-5698, 2014 WL 12539344, at *3 (E.D. La. June 20, 2014).

Therefore, here, like in *Young*, there are too many unknowns on the record before the Court to determine whether, in the cases where the repairs have been partially or completely made, Tompkins' estimates might assist the trier of fact. The Court will defer until trial a decision on whether, and to what extent, Tompkins will be allowed to testify regarding properties where repairs have been made.

Finally and similarly, Allstate attacks the sufficiency of the foundation of Tompkins' opinions because he was unaware of the current condition of the homes and "the costs incurred for any repairs, the sufficiency of any repairs, or even whether the property has been repaired at all." (Doc. 194-1 at 14 (citing Doc. 194-6 at 8).) As stated above, Tompkins' testimony will be relevant and assist the trier of fact in those cases where no repairs have been made. His opinions may be relevant in cases where repairs have been made if the claimant is "insured proceeding on an ACV basis." *Young*, 2014 WL 3662587, at *6. And finally*,* where partial repairs have been made, his testimony may be relevant depending on the nature of the repairs. *Lockett*, 2014 WL 2768720, at *3.

### C.  Methodology

Allstate's attack on Tompkins' methodology repeats its criticism of his opinions' lack of adequate foundation and data.

> Because Tompkins has submitted cookie-cutter styled reports, including boilerplate language that may or may not apply to a given property, there is no evidence that he has reliably applied the principles and methods to the facts of each individual case. Accordingly, the plaintiffs should not be permitted to call Mr. Tompkins to testify at trial.

(Doc. 194-1 at 16.) For the reasons previously given, these matters go to the weight and not the admissibility of the evidence and may be explored by Allstate on cross examination.

### D.  Requirements of Rule 26(a)(2)

Allstate argues that Rule 26 requires that the report be "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." (Doc. 194-1 at 10 (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).) Here, Allstate merely repackages its previous argument: it is impossible to know what particular paragraph of a given report applies (or doesn't) to the property that is the subject of the report. Thus, the only way to know which paragraph applies to which property is to "take his deposition and ask him." (Doc. 194-1 at 11 (citing Doc. 194-4 at 6).) Because the report does not comply with the completeness requirement of Rule 26(a)(2)(B)(i), Tompkins should not be permitted to testify or, alternatively, should be made available for deposition in each of the cases at Plaintiffs' costs. (Doc. 194-1 at 11.)

As this Court previously discussed in connection with Allstate's sufficiency argument, Tompkins' affidavit explains that each paragraph in a given report, although identical in language to that in other reports, applies to that specific property. Furthermore, the Xactimate Building Flood Estimate incorporated into Tompkins' report, which sets out the specific items needing repair and associated costs for the specific property in question, supplemented by his deposition and affidavit, render the report sufficiently complete and specific to give adequate notice to Allstate regarding his opinions as to a given property, the facts and data upon which he relied, along with his qualifications, prior testimony and compensation. *Nkansah v. Martinez*, No. 15-646, 2017 WL 2812733, at *8 (M.D. La. June 28, 2017) (deGravelles, J.) ("While the report is bare bones, to say the least, especially when viewed together with her deposition and supplemental affidavit, the opinions in the report can be ascertained."); *Am. Gen. Life Ins. Co. v. Russell*, No. 16-851, 2019 WL 4411819, at *5 (M.D. La. Sept. 16, 2019) (deGravelles, J.)

30

("When the report is combined with the deposition, it is clear that sufficient information has been provided regarding Bacon's opinions, data relied upon and reasons supporting it.")

While weaknesses in his report and inconsistencies between his deposition testimony (e.g. where he agreed that "there was no way from looking at the particular paragraph to identify which portion of that paragraph applied to that particular property" (Doc. 194-4 at 5)), and his affidavit on this issue (Doc. 199-3 at 1) (where he stated "[a]ny paragraph within the Observations section of my Expert Reports was based on my observations of that specific property") raise issues of credibility and competence, these are matters which go to the weight of his testimony and can be addressed during his trial testimony, both on direct and cross examination. This is especially true given the fact that the trial of this matter will be to the bench.

## VI.    CONCLUSION

For the foregoing reasons, Allstate's *Motion to Exclude the Testimony of Plaintiffs' Expert Tommy Tomkins* (Doc. 194) is denied.

Signed in Baton Rouge, Louisiana, on January 28, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**